# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ELBERT LEON CHAMBERS, JR.,    )
    )
            Plaintiff,    )
    )
          v.    )      1:16CV810
    )
NANCY A. BERRYHILL,    )
Acting Commissioner of Social    )
Security,[1]    )
    )
           Defendant.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Elbert Leon Chambers, Jr., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 190-98.) Upon denial of that application initially (Tr. 80-99, 118-22) and on reconsideration (Tr. 100-17, 130-34), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 135-37). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 55-69.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 9-24.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 7-8, 285-93), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since September 30, 2013, the application date.

2. [Plaintiff] has the following severe impairments: diabetes mellitus, human immunodeficiency virus (HIV), chronic obstructive pulmonary disorder (COPD), asthma, depression, degenerative disc disease, osteoarthritis, anxiety, diabetic neuropathy, lumbar radiculopathy, and polysubstance abuse.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except that [Plaintiff]: can frequently, but not continuously,

2

perform all postural activities; must avoid ladders, ropes, scaffolds, unprotected heights, and machinery with dangerous parts; needs an assistive device to ambulate; can follow short, simple instructions and perform routine tasks, but cannot perform work requiring a production rate or demand pace; is able to sustain attention and concentration for two hours at a time; can frequently, but not continuously, have contact or interactions with the public; must avoid concentrated exposure to respiratory irritants; should avoid work environments dealing with crisis situations, complex decision making, or constant changes in a routine setting.

. . .

5. [Plaintiff] has no past relevant work.

. . .

9. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

10. [Plaintiff] has not been under a disability, as defined in the [] Act, since September 30, 2013, the date the application was filed.

(Tr. 14-24 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

3

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]   "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age,

_____

[2] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of
(continued...)

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ "erred in failing to accord appropriate weight to the opinion evidence of record" (Docket Entry 12 at 6 (capitalization omitted)); and

(2) the ALJ "erred in finding that [Plaintiff] has the [RFC] to perform a reduced range of light work, thereby misapplying the Medical-Vocational Guidelines" (id. at 10 (capitalization omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 14 at 10-19.)

### 1. Opinion Evidence

In Plaintiff's first assignment of error, he contends that the ALJ "erred in failing to accord appropriate weight to the opinion evidence in the record." (Docket Entry 12 at 6 (capitalization omitted).) More specifically, Plaintiff maintains that the ALJ "erred by according significantly less weight to [the opinions of treating physician Dr. Jessica B. Wells] than to the consultative opinions of Dr. Larry M. Gish and Dr. Amrutha Muthu, as th[o]se

---

[5] (...continued)
the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

[latter] opinions were based upon a mere snapshot of [Plaintiff's] functioning for one day." (Id. at 8; see also Tr. 19-21 (ALJ's discussion regarding opinions of Drs. Muthu, Wells, and Gish), 467-69 (Plaintiff's February 28, 2014 office visit with Dr. Muthu), 471-77 (records of Dr. Gish's consultative examination), 615-18 (Dr. Wells's opinions.) Additionally, Plaintiff argues that, given "[P]laintiff's worsening condition" (Docket Entry 12 at 9), the ALJ "erred by not giving the proper weight to [a] prior [ALJ] decision" awarding Plaintiff benefits (id. at 8 (citing Tr. 70-79, and Albright, 174 F.3d at 473)). Plaintiff further asserts that the ALJ "erred in failing to specifically address the significance of [Plaintiff's] Global Assessment of Functioning ("GAF") scores throughout the record," all of which reflected "serious symptoms or serious impairment in social, occupational, or school functioning." (Id. at 9.)[6] Plaintiff's arguments fall short.

a.  Treating Physician's Opinion

Plaintiff first maintains that the ALJ "erred by according significantly less weight to [the opinions of treating physician Dr. Wells] than to the consultative opinions of [Drs. Gish and

---

[6] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text revision 2000). A GAF of 41 to 50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34. A new edition of the leading treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

Muthu], as th[o]se [latter] opinions were based upon a mere snapshot of [Plaintiff's] functioning for one day." (Id. at 8.) The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference.

For example, the nature and extent of each treatment relationship may appreciably temper the weight an ALJ affords an opinion. 20 C.F.R. § 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. § 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

10

In this case, on December 1, 2015, Dr. Wells completed a
Medical Source Statement of Ability to Do Work-Related Activities
(Physical) ("MSS"), opining that Plaintiff could occasionally and
frequently lift and/or carry less than 10 pounds (see Tr. 615),
could stand and/or walk for less than two hours total in a work day
(Tr. 616), must periodically alternate between sitting and standing
(id.), and possessed limited ability to push and/or pull with his
upper and lower extremities (id.). In addition, Dr. Wells stated
that Plaintiff could occasionally climb and balance, but could
never kneel, crawl, or stoop (id.), could only occasionally reach
(Tr. 617), should have limited contact with vibration and workplace
hazards (Tr. 618), and "needs a cane for walking most of the time"
(id.). Dr. Wells attributed those limitations to pain, limited
range of motion, and weakness in Plaintiff's back and legs
"clinically consistent with spinal stenosis" (Tr. 616), and
expressed "confiden[ce] [that] a MRI . . . would show significant
lumbar spine pathology but [Plaintiff] d[id] not have the funding
to obtain one" (Tr. 618).

Here, the ALJ's evaluation of Dr. Wells's opinion complied
with the regulatory requirements. The ALJ discussed Dr. Wells's
opinions on the MSS (see Tr. 19-20), but accorded those opinions
"little weight" for several reasons:

> First, Dr. Wells had a relatively limited history with
> [Plaintiff] at the time of her [MSS]; she had seen
> [Plaintiff] only four occasions over the preceding eight
> months. Next, her own treatment notes from this period

are wholly inconsistent with her opinions. For example, in October 2015, she stated that [Plaintiff] had a "normal range of motion" with no edema or tenderness. Likewise, in July 2015, Dr. Wells stated that [Plaintiff] had a normal range of motion with a normal gait. Despite his complaints, Dr. Wells did not perform musculoskeletal or neurological examinations in April or May [2015]. It was only after Dr. Wells completed her [MSS] that she began recording symptoms such as lower extremity weakness, though she continued to observe "normal range of motion."

Rather than rely upon her own physical examinations to support her opinions, Dr. Wells relied primarily upon a 2014 physical therapy assessment. Physical therapy notes, from June 2015, show that [Plaintiff] had a greater than 50% loss in flexion and extension, with pain. However, these notes, like Dr. Wells's opinions, are inconsistent with the remainder of the medical record.

For instance, in his March 2014 consultative examination, Dr. Larry M. Gish, M.D., observed that [Plaintiff] had only slight limitations in flexion, with full extension and lateral flexion[]. Moreover, Dr. Gish observed that [Plaintiff's] sensation to light touch was normal, and that he had a normal gait and station, with good muscle strength in all major distal and proximal muscle groups. Dr. Gish also observed that [Plaintiff] had equal and symmetrical reflexes and good grasp bilaterally. Dr. Gish noted that [Plaintiff] reported "some pain on straight leg raising" but that it did not radiate down his leg.

Thereafter, an examination by [Plaintiff's] podiatrist from the month preceding the above physical therapy note showed [Plaintiff] to have full muscle strength in his lower extremities bilaterally.

Subsequently, an August 11, 2014 musculoskeletal examination found [Plaintiff] to have "full range of motion throughout with no evidence of weakness." [Plaintiff] complained of aggravated back pain in October 2014, and demonstrated pain with range of motion testing. However, even then, there was no evidence of tenderness or muscle spasm, and straight let testing was negative bilaterally. Thereafter, emergency room records from

12

December 4, 2014 indicated that [Plaintiff] had no obvious motor, sensory, or cerebellar deficits.

Finally, emergency room records from August 2015 indicated that [Plaintiff] had full range of motion in his back, with no pain upon palpation, no vertebral tenderness, and full range of motion in all extremities. He also possessed full strength in his lower extremities, with normal plantar dorsiflexion of both great toes.

Objectively, imaging of [Plaintiff's] lumbar spine, from September 23, 2013, showed him to have a normal lumbar spine, except for "mild" multilevel endplate osteophytes. X-rays performed in October 2015 revealed moderate levoscoliosis at the L3 level with "mild" degenerative disc disease suspected in the lower lumbar spine. As such, I give little weight to Dr. Wells's speculation regarding the probable outcome of MRI imaging because such speculation is not supported by the available objective imaging, and there are few, if any, corresponding clinical findings that might support such a conclusion.

Finally, as for [Plaintiff's] left knee osteoarthritis, the prior decision stated that MRI imaging of [Plaintiff's] left knee had shown lateral tibial plateau edema, a nondisplaced subcortical fracture, and a small joint effusion. In 2008, [Plaintiff] was given a knee sleeve after subsequent imaging suggested that the joint effusion had worsened. However, imaging of [Plaintiff's] left knee from September 2013 was benign, with no evidence of a joint effusion, and the consultative examiner noted that [Plaintiff] walked without a limp.

Based upon the foregoing, <u>I find that Dr. Wells's opinions are unsupported by her own treatment records and are inconsistent with the remaining objective medical evidence</u>.

(Tr. 20-21 (internal citations omitted) (emphasis added).)

In attacking the ALJ's decision to accord "little weight" to Dr. Wells's opinions, Plaintiff does not address the ALJ's above-quoted rationale. (See Docket Entry 12 at 6-8.) Rather, he claims, without citation to record evidence, that "Dr. Wells's

13

opinion is supported by acceptable medical techniques and there is not persuasive contradictory evidence in the record such that her opinion can be disregarded." (Id. at 8.) However, that conclusory assertion cannot hold up against the ALJ's findings, supported by specific references and citations to record evidence, that (1) Dr. Wells's "treatment notes . . . are wholly inconsistent with her opinions" (Tr. 20); and (2) Dr. Wells's "opinions . . . are inconsistent with the remaining objective medical evidence" (Tr. 21).

Plaintiff additionally faults the ALJ for "according significantly less weight to [Dr. Wells's] opinion than to the consultative opinions of [Drs. Gish and Muthu], as th[o]se opinions were based upon a mere snapshot of [Plaintiff's] functioning on one day." (Docket Entry 12 at 8.) As an initial matter, Plaintiff erroneously describes Dr. Muthu's opinions as "consultative." (Id.) Dr. Muthu, a psychiatrist at Daymark Recovery Services, treated Plaintiff for his mental health symptoms on one occasion, February 28, 2014 (see Tr. 467-68), but did not conduct a consultative examination of Plaintiff at the request of the Social Security Administration or any other agency. Moreover, the ALJ did not merely accord more weight to Dr. Gish's consultative opinions than to Dr. Wells's opinions. (See Tr. 19-21.) "The evidence supported a contrary conclusion to [the treating physician's] opinion, and the ALJ was not prohibited from reaching that

conclusion simply because non-treating physicians also reached it." Forrester v. Commissioner of Soc. Sec., 455 F. App'x 899, 902–03 (11th Cir. 2012). The ALJ here explained his decisions to give the opinions of Drs. Gish and Wells their respective weights, and supported that explanation with substantial evidence. (See Tr. 19-21.)

b.    Prior ALJ Decision

Plaintiff next contends that, given "[P]laintiff's worsening condition" (Docket Entry 12 at 9), the ALJ "erred by not giving the proper weight to [a] prior [ALJ] decision" awarding Plaintiff benefits (id. at 8 (citing Tr. 70-79, and Albright, 174 F.3d at 473)). The prior ALJ had found, on July 23, 2009, that Plaintiff "lack[ed] the [RFC] to perform any work (even sedentary work) on a sustained basis" (Tr. 77), since February 20, 2007. (See Tr. 70-79.)[7]

In Albright, the United States Court of Appeals for the Fourth Circuit rebuffed the manner in which an ALJ treated a previous ALJ's denial of the claimant's application for benefits. Albright, 174 F.3d at 474-78. In that case, the new ALJ did not analyze whether the claimant's condition had worsened since the prior ALJ's decision, but rather simply adopted the prior ALJ's denial of benefits as res judicata based upon the Social Security Administration's ("SSA") Acquiescence Ruling 94-2(4) ("AR 94-

---

[7] Plaintiff lost his entitlement to benefits in October 2011 due to his incarceration following a felony conviction. (See Tr. 12.)

15

2(4)"). Id. at 474, 475. AR 94-2(4) required ALJs to adopt
findings from prior ALJ decisions unless the claimant produced new
and material evidence. Id. The Fourth Circuit found the
application of AR 94-2(4) to Albright's claim for benefits
"imprudent," id. at 477, and contrary to the SSA's long-standing
"treatment of later-filed applications as separate claims," id. at
476.

In response to Albright, the SSA issued Acquiescence Ruling
00-1(4), (Interpreting Lively v. Secretary of Health and Human
Services) – Effect of Prior Disability Findings on Adjudication of
a Subsequent Disability Claim – Titles II and XVI of the Social
Security Act, 2000 WL 43774 (Jan. 12, 2000) ("AR 00-1(4)"). AR 00-
1(4) provides as follows:

> When adjudicating a subsequent disability claim . . ., an
> [ALJ] determining whether a claimant is disabled during
> a previously unadjudicated period must consider . . . a
> prior finding [of a claimant's RFC or other finding
> required at a step in the SEP] as evidence and give it
> appropriate weight in light of all relevant facts and
> circumstances. In determining the weight to be given
> such a prior finding, an [ALJ] will consider such factors
> as: (1) whether the fact on which the prior finding was
> based is subject to change with the passage of time, such
> as a fact relating to the severity of a claimant's
> medical condition; (2) the likelihood of such a change,
> considering the length of time that has elapsed between
> the period previously adjudicated and the period being
> adjudicated in the subsequent claim; and (3) the extent
> that evidence not considered in the final decision on the
> prior claim provides a basis for making a different
> finding with respect to the period being adjudicated in
> the subsequent claim.

AR 00-1(4), 2000 WL 43774, at *4 (emphasis added).

16

The ALJ's evaluation of the prior ALJ's decision complies with AR 00-1(4). The ALJ noted at the outset of his decision that he had "considered the prior ALJ decision as evidence, pursuant to . . . AR 00-1(4), and [gave] the conclusions therein weight as appropriate." (Tr. 12.) The ALJ then further explained the weight he accorded to the prior ALJ decision as follows:

> . . . I have given little weight to the [RFC] findings from the prior ALJ decision. In that decision, the ALJ had found that [Plaintiff's] pain and sleepiness precluded him from performing work at the sedentary level or of performing the mental demands of unskilled work on a sustained basis. However, the ALJ also stated that <u>he expected that [Plaintiff's] symptoms would improve with treatment, and he recommended a continuing disability review after 12 months</u>.

(Tr. 22 (internal citation omitted) (emphasis added).) Thus, the ALJ expressly considered whether a "fact on which the prior [RFC] finding was based" would likely change, AR 00-1(4), 2000 WL 43774, at *4. Moreover, the ALJ's discussion of the evidence dated after the prior ALJ's decision on July 23, 2009 (<u>see</u> Tr. 17-23), demonstrates that he considered "the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding," AR 00-1(4), 2000 WL 43774, at *4.

c. GAF Scores

Plaintiff further argues that the ALJ "erred in failing to specifically address the significance of [Plaintiff's] [GAF] scores throughout the record," all of which reflected "serious symptoms or

serious impairment in social, occupational, or school functioning."
(Docket Entry 12 at 9.)

Effective July 22, 2013, the Social Security Administration clarified its position on the relevance of GAF scores as follows:

> [W]hen it comes from an acceptable medical source, a GAF rating is a medical opinion . . . . An [ALJ] considers a GAF score with all of the relevant evidence in the case file and weighs a GAF rating as required by [20 C.F.R. § 416.927(c)] . . . . [A] GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be used to 'raise' or 'lower' someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.

Administrative Message 13066, <u>Global Assessment of Functioning (GAF) Evidence in Disability Adjudication</u> ("AM-13066").

Consistent with the foregoing policy and contrary to Plaintiff's argument, the ALJ did explicitly discuss and assign weight to the GAF scores of record:

> The record also contains a number of [GAF] scores, ranging from 41 to 45. Such scores indicate generally serious symptoms. However, a GAF score is of limited value in assessing functional capacity because it represents a particular clinician's subjective evaluation at a single point in time. They may vary both from time to time and between practitioners. Moreover, GAF scores can be based upon factors not relevant to a determination of disability, and are not designed for adjudicative determinations. As such, [Plaintiff's] GAF scores have been considered, but have been given little weight.

18

(Tr. 22 (internal citation omitted).) That discussion, when considered in the context of the ALJ's prior discussion of Plaintiff's limited mental health treatment and minimal findings on mental status examination (see Tr. 19), allow the Court to meaningfully review the ALJ's decision to accord the GAF scores "little weight" (Tr. 22).

In sum, Plaintiff's first claim on review entitles him to no relief.

## 2. RFC

In Plaintiff's second issue on review, he asserts that the ALJ "erred in finding that [Plaintiff] has the [RFC] to perform a reduced range of light work, thereby misapplying the Medical-Vocational Guidelines." (Docket Entry 12 at 10 (capitalization omitted).) According to Plaintiff, his "credible testimony" (id.) and Dr. Wells's opinions establish his inability "to work at any substantial gainful activity level" (id. at 11). Further, Plaintiff points out that, had the ALJ "found that [P]laintiff could perform sedentary work, a finding of disabled would have been directed by [Rule 201.09 of] the Medical-Vocational Guidelines," which "call[s] into question [the ALJ's] decision to limit Plaintiff to light work." (Id.) Plaintiff's arguments fail to warrant relief.

Plaintiff's reliance on his own testimony to challenge the ALJ's RFC determination falls short. The ALJ evaluated Plaintiff's

19

credibility, but determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [we]re not entirely credible." (Tr. 18.) Plaintiff has not challenged the ALJ's credibility evaluation (see Docket Entry 12 at 6-11) and thus has not established that the ALJ erred in not fully crediting Plaintiff's statements in formulating the RFC. Similarly, as discussed above in connection with Plaintiff's first issue on review, the ALJ did not err in discounting Dr. Wells's opinions.

Finally, according to Plaintiff, the fact that Rule 201.09 of the Medical-Vocational Guidelines would direct a finding of disabled if the ALJ had limited Plaintiff's RFC to sedentary work, "call[s] into question [the ALJ's] decision to limit Plaintiff to light work, in contradiction with the medical evidence of record, including the assessment of [Plaintiff's] treating physician and his documented need for an assistive device." (Id. at 11.) In essence, Plaintiff contends that the ALJ opted to set Plaintiff's RFC at the light level of exertion, without adequate support, to avoid a finding of presumptive disability under Rule 201.09.

This contention fails in two respects. First, the ALJ did provide adequate support for the RFC determination, including, inter alia, citing the findings of consultative examiner Dr. Gish, who documented "only slight limitations" in range of motion, normal sensation to light touch, normal gait and station, good muscle

20

strength in all major muscle groups, normal reflexes, and good grasp. (Tr. 20 (citing Tr. 471-75).) To the extent Plaintiff claims that the ALJ's light RFC "contradict[ed]" Dr. Wells' assessment and opinion that Plaintiff needed a cane, as discussed above, substantial evidence supports the ALJ decision to discount Dr. Wells's opinions, and the ALJ explicitly included Plaintiff's need for an assistive device to ambulate in the RFC (see Tr. 17).

Second, Plaintiff has not supported her speculative argument that the ALJ intentionally chose to set Plaintiff's RFC at the light level of exertion to avoid a disability finding under Rule 201.09 with any facts of record (see Docket Entry 12 at 11), an omission which dooms that argument, see Calloway v. Barnhart, No. CIV.A. 7:05CV00548, 2006 WL 2471525, at *4 (W.D. Va. Aug. 24, 2006) (unpublished) (rejecting the plaintiff's contention that "the ALJ changed his interpretation of [the] plaintiff's RFC to . . . place [the plaintiff] in the medium work category, in order to avoid a finding of disability as would be directed by the Medical-Vocational Guidelines").

Under these circumstances, Plaintiff's second claim on review lacks merit.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 21, 2017